E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
FRANCES S. LEWIS (Cal. Bar No. 291055)
Assistant United States Attorney
Deputy Chief, General Crimes Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4850
     Facsimile: (213) 894-0141
     E-mail:   Frances.Lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 22-36-MWF |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RICHARD ROYDEN CHAMBERLIN |
| v. | |
| RICHARD ROYDEN CHAMBERLIN, | |
| Defendant. | |

1.   This constitutes the plea agreement between RICHARD ROYDEN CHAMBERLIN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts two and four of the indictment in United States v. CHAMBERLIN, CR No. 22-CR-36-

MWF, which charge defendant with forcible interference with the obtaining and provision of reproductive health services, in violation of 18 U.S.C. § 248(a)(1), and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

      b.   Not contest the Factual Basis agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

      h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

      i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a

guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

      j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

      k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

      l.   Agree to and not oppose the imposition of the following conditions of probation or supervised release:

         i.   The defendant shall not contact, visit, or come within 100 yards of any Planned Parenthood facility or property, or any staff thereof, without prior written approval from the United States Probation Office and advanced notice to Planned Parenthood.

         ii.   The defendant shall comply with the rules and regulations of the Computer Monitoring Program.  The defendant shall pay the cost of the Computer Monitoring Program; and

         iii. The defendant shall submit the defendant's person, property, house, residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, email accounts, social media accounts, cloud storage accounts, or other areas under the defendant's control, to a search conducted by a United States Probation Officer or law enforcement officer.

Failure to submit to a search may be grounds for revocation.  The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.  Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner upon reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

    3.    Defendant further agrees:

        a.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

            i.    One Phoenix Arms, model HP22, .22 caliber pistol, bearing serial number 4203784;

            ii.    Ten rounds of Federal Cartridge Company .22 caliber ammunition;

            iii. All ammunition and magazines seized on January 28, 2022, from the residence of defendant, including but not limited to the ammunition charged in count five of the indictment and set forth in Exhibit A, attached hereto; and

            iv.    The additional firearms and ammunition set forth in Exhibit A;

            v.    All non-lethal firearms or projectiles, including but not limited to any airguns, BB guns, pellet guns, paintball guns, replica guns, toy guns, fireworks, gun powder, pellets, gas cartridges, or other items used to operate such firearms;

1  (collectively, the "Forfeitable Property").

2       b.   To the Court's entry of an order of forfeiture at or

3  before sentencing with respect to the Forfeitable Property and to the

4  forfeiture of the assets.

5       c.   That the Preliminary Order of Forfeiture shall become

6  final as to the defendant upon entry.

7       d.   To take whatever steps are necessary to pass to the

8  United States clear title to the Forfeitable Property, including,

9  without limitation, the execution of a consent decree of forfeiture

10  and the completing of any other legal documents required for the

11  transfer of title to the United States.

12       e.   Not to contest any administrative forfeiture

13  proceedings or civil judicial proceedings commenced against the

14  Forfeitable Property.  If defendant submitted a claim and/or petition

15  for remission for all or part of the Forfeitable Property on behalf

16  of himself or any other individual or entity, defendant shall and

17  hereby does withdraw any such claims or petitions, and further agrees

18  to waive any right he may have to seek remission or mitigation of the

19  forfeiture of the Forfeitable Property.  Defendant further waives any

20  and all notice requirements of 18 U.S.C. § 983(a)(1)(A) and/or

21  requirements of the Government to commence forfeiture actions

22  pursuant to 18 U.S.C. § 924(d)(1).

23       f.   Not to assist any other individual in any effort

24  falsely to contest the forfeiture of the Forfeitable Property.

25       g.   Not to claim that reasonable cause to seize the

26  Forfeitable Property was lacking.

27

28

1          h.   To prevent the transfer, sale, destruction, or loss of

2    the Forfeitable Property to the extent defendant has the ability to

3    do so.

4          i.   To fill out and deliver to the USAO a completed

5    financial statement listing defendant's assets on a form provided by

6    the USAO.

7          j.   That forfeiture of Forfeitable Property shall not be

8    counted toward satisfaction of any special assessment, fine,

9    restitution, costs, or other penalty the Court may impose.

10         k.   With respect to any criminal forfeiture ordered as a

11   result of this plea agreement, defendant waives: (1) the requirements

12   of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

13   notice of the forfeiture in the charging instrument, announcements of

14   the forfeiture at sentencing, and incorporation of the forfeiture in

15   the judgment; (2) all constitutional and statutory challenges to the

16   forfeiture (including by direct appeal, habeas corpus or any other

17   means); and (3) all constitutional, legal, and equitable defenses to

18   the forfeiture of the Forfeitable Property in any proceeding on any

19   grounds including, without limitation, that the forfeiture

20   constitutes an excessive fine or punishment.  Defendant acknowledges

21   that the forfeiture of the Forfeitable Property is part of the

22   sentence that may be imposed in this case and waives any failure by

23   the Court to advise defendant of this, pursuant to Federal Rule of

24   Criminal Procedure 11(b)(1)(J), at the time the Court accepts

25   defendant's guilty plea.

26                       <u>THE USAO'S OBLIGATIONS</u>

27      4.   The USAO agrees to:

28

a.   Not contest the Factual Basis agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 245, 248, and 922 arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 16 below or for possession of the firearms and ammunition identified in Exhibit A.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any

departure from that range, and the sentence to be imposed after
consideration of the Sentencing Guidelines and all other relevant
factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSES</u>

5.   Defendant understands that for defendant to be guilty of
the crime charged in count two, that is, forcible interference with
the obtaining and provision of reproductive health services, in
violation of 18 U.S.C. § 248(a)(1), the following must be true:
(1) defendant used or threatened the use of force; (2) defendant did
so to intentionally intimidate or interfere with a person or class of
persons; and (3) defendant acted because that person or class of
persons is or has been, or in order to intimidate such person or any
other person or class of persons from, obtaining or providing
reproductive health services.  Reproductive health services means
reproductive health services provided in a hospital, clinic,
physician's office, or other facility, and includes medical,
surgical, counselling, or referral services relating to the human
reproductive system, including services relating to pregnancy or the
termination of a pregnancy.

6.   Defendant understands that for defendant to be guilty of
the crime charged in count four, that is, felon in possession of a
firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), the
following must be true: (1) defendant knowingly possessed a firearm
or ammunition; (2) the firearm or ammunition had been shipped or
transported from one state to another or between a foreign nation and
the United States; (3) at the time defendant possessed the firearm or
ammunition, defendant had been convicted of a crime punishable by
imprisonment for a term exceeding one year; and (4) at the time

defendant possessed the firearm or ammunition, defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

<u>PENALTIES AND RESTITUTION</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 248(a)(1) is: one year of imprisonment; one year of supervised release; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 922(g)(1) is: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 11 years' imprisonment; a three-year period of supervised release; a fine of $350,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $125.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts

greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $42,663.33, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case

1  may also subject defendant to various other collateral consequences,

2  including but not limited to revocation of probation, parole, or

3  supervised release in another case and suspension or revocation of a

4  professional license.  Defendant understands that unanticipated

5  collateral consequences will not serve as grounds to withdraw

6  defendant's guilty pleas.

7       13.  Defendant and his counsel have discussed the fact that, and

8  defendant understands that, if defendant is not a United States

9  citizen, the convictions in this case makes it practically inevitable

10  and a virtual certainty that defendant will be removed or deported

11  from the United States.  Defendant may also be denied United States

12  citizenship and admission to the United States in the future.

13  Defendant understands that while there may be arguments that

14  defendant can raise in immigration proceedings to avoid or delay

15  removal, removal is presumptively mandatory and a virtual certainty

16  in this case.  Defendant further understands that removal and

17  immigration consequences are the subject of a separate proceeding and

18  that no one, including his attorney or the Court, can predict to an

19  absolute certainty the effect of his/her convictions on his

20  immigration status.  Defendant nevertheless affirms that he wants to

21  plead guilty regardless of any immigration consequences that his

22  pleas may entail, even if the consequence is automatic removal from

23  the United States.

24                              FACTUAL BASIS

25       14.  Defendant admits that defendant is, in fact, guilty of the

26  offenses to which defendant is agreeing to plead guilty.  Defendant

27  and the USAO agree to the statement of facts provided below and agree

28  that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 16 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Planned Parenthood is a women's health clinic (the "clinic") in
Pasadena, California providing reproductive health services to its
patients.  On at least 11 occasions between June 2020 and May 2021,
in Los Angeles County, within the Central District of California,
defendant, by force and threat of force, intentionally intimidated
and interfered with, and attempted to intimidate, and interfere with,
the clinic and its doctors, staff, and patients.  On each of these 11
occasions, defendant acted because the clinic was and had been
providing, and because such patients were and had been obtaining,
reproductive health services.  Through his actions, defendant sought
to intimidate the clinic and its doctors, staff, and patients from
providing and obtaining reproductive health services.

Specifically, beginning in June 2020, defendant drove his
Chevrolet Malibu down Lake Avenue past the clinic and intentionally
fired multiple pellets from a BB gun at the front door of the clinic.
The clinic was clearly marked and identified as "Planned Parenthood"
using signage that was visible from the street.  Defendant had also
been living in the area and knew that the location was a Planned
Parenthood.  Defendant intentionally targeted the clinic because of
his belief that its doctors and staff provided -- and its patients
obtained -- reproductive health services, including services related
to the termination of a pregnancy.  Defendant's first three BB gun
attacks against the clinic occurred on or about June 27, 2020, July

27, 2020, and August 12, 2020, respectively.  On all three occasions, defendant's projectiles damaged the clinic, shattered multiple windows, and intimidated the staff of the clinic.

Defendant attacked the clinic with his BB gun on at least two more occasions in March 2021.  On Monday, March 29, 2021, at 8:52 a.m., while the clinic was open, defendant drove by the clinic and again attacked the clinic by firing his BB gun at the front entrance. An employee of the clinic heard an object hit her office window, which caused her to fear for her physical safety and interfered with the performance of her job duties.

On March 30, 2021, at around 8:30 a.m. while the clinic was open and receiving patients, defendant again drove by the clinic and fired his BB gun at the front entrance.  Defendant fired his BB gun intending to intimidate and interfere with the clinic and its doctors, staff, and patients because of his animus against the clinic for providing reproductive health services, specifically, services related to the termination of a pregnancy.  During the attack, a patient's support companion, A.T. was nearly hit by BB pellets as A.T. sat on a bench on the clinic's front porch.  A.T. had come to the clinic to support a friend who was inside receiving services at the time of the assault.  The BB gun pellets peppered banners directly in front of A.T. as well as the building frame where A.T. was seated.

Defendant attacked the clinic again with his BB gun in rapid succession at least six more times:  April 9, 2021, April 10, 2021, April 11, 2021, April 15, 2021, April 25, 2021, and May 2, 2021.

**On May 7, 2021, defendant again drove by the clinic in the morning as the clinic was opening and fired upon the front entrance**

**of the clinic with his BB gun.  Defendant again used force and the threat of force to intentionally intimidate and interfere with the clinic and its doctors, staff, and patients because of the reproductive services provided by the clinic.**

During and after his arrest, defendant admitted that he had an animus against the clinic and that he had previously gone "undercover" in an effort to "expose" the clinic for its work related to the provision of reproductive health services, including services related to the termination of pregnancies.

In his car on May 7, 2021, defendant had approximately eight BB guns, including BB guns designed to look like assault rifles, as well as multiple pressurized gas canisters of $CO_2$ and BB pellets for use in BB guns.  Defendant also had a brown pistol-style BB gun located under the driver seat loaded with metal pellets, multiple packages of illegal fireworks, and a gray backpack on the front passenger seat in which defendant kept his black Phoenix Arms, model HP22, .22 caliber pistol, bearing serial number 4203784 (the "Phoenix HP22 handgun"), which was loaded with 10 rounds of Federal Cartridge Company .22 caliber ammunition.  Both the Phoenix HP22 handgun and the ammunition inside it were manufactured outside of California and therefore traveled or were shipped between at least two states, and defendant's possession of these items in California affected interstate commerce.

Defendant possessed such firearm and ammunition after he had previously been convicted of, and knowing that he had previously been convicted of, a felony crime punishable by a term of imprisonment exceeding one year, namely, attempted transportation of a narcotic drug for sale, in violation of Arizona Revised Statute §§ 13-1001, 13-3408(A)(7), 13-3408(B)(7), 13-3408(D), 13-3401, 13-701, 13-702,

and 13-801, in the Superior Court of the State of Arizona, Navajo County, Case No. S0900CR201100907, on or about November 5, 2012.

After defendant's arrest on May 7, 2021, defendant attempted to dispose of his remaining firearms.  Specifically, defendant went to a storage unit where he removed several firearms.  Defendant then sold four firearms listed in Exhibit A at a local consignment store. Defendant also transferred custody of an additional eight firearms, also listed in Exhibit A, to a neighbor.

On January 28, 2022, at his home in Chino, California, defendant knowingly possessed thousands of rounds of ammunition, including the 5,960 rounds identified in count five of the indictment and set forth in Exhibit A.  Defendant also had in his home boxes of fireworks, canisters of gun powder, a dozen additional BB guns and ammunition for BB guns, including rifle-style airsoft guns, multiple magazines for real handguns, a black cylinder resembling a suppressor, a P80 Polymer 80 gun-making kit and multiple gun parts, including a gun stock and the barrel for a .22 caliber pistol, as well as multiple documents identifying and referring to Planned Parenthood.

<u>SENTENCING FACTORS</u>

15.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

16.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

<u>Count Four</u>

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2K2.1(a)(6) |
| Eight or More Firearms: | +4 | U.S.S.G. § 2K2.1(b)(1) |

Defendant and the USAO have no agreement as to the applicable base offense level or Guidelines calculations for count two.  Defendant and the USAO also reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  The base offense level set forth above is based on information currently known to the government regarding defendant's criminal history.  Defendant understands and agrees that defendant's base offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2 or an armed career criminal under U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e), or if defendant has additional prior conviction(s) for either a crime of violence or a controlled substance offense under U.S.S.G. § 2K2.1.  If defendant's base offense level is so altered, defendant and the USAO will not be bound by the base offense level agreed to above.

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing

16

Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

## WAIVER OF APPEAL OF CONVICTION

2      20.  Defendant understands that, with the exception of an appeal

3 based on a claim that defendant's guilty pleas were involuntary, by

4 pleading guilty defendant is waiving and giving up any right to

5 appeal defendant's convictions on the offenses to which defendant is

6 pleading guilty.  Defendant understands that this waiver includes,

7 but is not limited to, arguments that the statutes to which defendant

8 is pleading guilty are unconstitutional, and any and all claims that

9 the statement of facts provided herein is insufficient to support

10 defendant's pleas of guilty.

11 ## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

12      21.  Defendant agrees that, provided the Court imposes a total

13 term of imprisonment on all counts of conviction within or below the

14 range corresponding to an offense level of 13 and the criminal

15 history category calculated by the Court, defendant gives up the

16 right to appeal all of the following: (a) the procedures and

17 calculations used to determine and impose any portion of the

18 sentence; (b) the term of imprisonment imposed by the Court; (c) the

19 fine imposed by the Court, provided it is within the statutory

20 maximum; (d) to the extent permitted by law, the constitutionality or

21 legality of defendant's sentence, provided it is within the

22 statutory; (e) the amount and terms of any restitution order,

23 provided it requires payment of no more than $42,663.33; (f) the term

24 of probation or supervised release imposed by the Court, provided it

25 is within the statutory maximum; and (g) any of the following

26 conditions of probation or supervised release imposed by the Court:

27 the conditions set forth in Second Amended General Order 20-04 of

28 this Court; the drug testing conditions mandated by 18 U.S.C.

§§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

22.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

23.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 13 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $42,663.33.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

24.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its

19

obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

25. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

<u>EFFECTIVE DATE OF AGREEMENT</u>

26. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

27.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case.  This paragraph permits both

the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_Frances S. Lewis_                                    11/28/22

_____          _____
FRANCES S. LEWIS                                   Date
Assistant United States Attorney

_Richard Royden Chamberlin_                      11/23/22
_____          _____
RICHARD ROYDEN CHAMBERLIN                Date
Defendant

_Antonio Villaamil_                                   11/28/22
_____          _____
ANTONIO VILLAAMIL                                   Date
Deputy Federal Public Defender
Attorney for Defendant RICHARD
ROYDEN CHAMBERLIN

24

1

## CERTIFICATION OF DEFENDANT

2     I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement.  No one has threatened or forced me in

14 any way to enter into this agreement.  I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charges and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19

20 RICHARD ROYDEN CHAMBERLIN        11/23/22
   Defendant                    Date

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am RICHARD ROYDEN CHAMBERLIN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          ___11/28/22___
ANTONIO VILLAAMIL                          Date
Deputy Federal Public Defender
Attorney for Defendant RICHARD
ROYDEN CHAMBERLIN

## EXHIBIT A

**I.   Firearms Defendant Transferred in or about June 2021:**

1.   A Marlin, Model 60, .22 caliber semi-automatic rifle bearing serial number 12369520;

2.   A Rossi, 12-gauge shotgun bearing serial number S12SP047165;

3.   A Hi-Point, 9mm semi-automatic handgun bearing serial number P202549;

4.   A Russian, Model M44, 7.62 x 54R semi-automatic rifle bearing serial number BP8746.

**II.   Firearms Defendant Transferred in or about August 2021:**

5.   A Smith & Wesson handgun bearing serial number PBM3465;

6.   An Israel Military Industries, Desert Eagle .40 caliber pistole bearing serial number 20314240;

7.   A Smith & Wesson, Model SW95 handgun bearing serial number PAC6964;

8.   A Springfield Armory, Model XD-45ACP handgun bearing serial number XD689908;

9.   A Ruger, Model 10/22, .22 caliber rifle bearing serial number 253-59280;

10.  A Georgia VT Model Yugo 7.62 x 39 caliber long gun bearing serial number 716925;

11.  A Hi-Point, Model 995 long gun bearing serial number B45885;

12.  A Marlin Firearms, Model 700 long gun bearing serial number 09357532.

**III. Firearm(s) Defendant Transferred on an Unknown Date:**

13.   A Phoenix Arms, model HP22A, semi-automatic pistol, bearing serial number 4258375.

**IV.   A partial list of the ammunition recovered from defendant's home on or about January 28, 2022:**

14.   1732 rounds of Armscor .22 caliber ammunition;

15.   794 rounds of Federal Cartridge .22 caliber ammunition;

16.   790 rounds of Winchester .22 caliber ammunition;

17.   650 rounds of Remington .22 caliber ammunition;

18.   643 rounds of Cascade Cartridge .22 caliber ammunition;

19.   372 rounds of Wolf 7.62mm caliber ammunition;

20.   160 rounds of Barnaul 7.62mm caliber ammunition;

21.   152 rounds of Federal Cartridge 12-gauge shotgun ammunition;

22.   150 rounds of Tulammo .40 caliber ammunition;

23.   120 rounds of Cascade Cartridge .40 caliber ammunition;

24.   107 rounds of Winchester 12-gauge shotgun ammunition;

25.   100 rounds of Tulammo 7.62mm caliber ammunition;

26.   64 rounds of Winchester .40 caliber ammunition;

27.   44 rounds of Hy Score .22 caliber ammunition;

28.   20 rounds of Western Cartridge 5.56mm caliber ammunition;

29.   19 rounds of Hornady .308 caliber ammunition;

30.   18 rounds of Western Cartridge .22 caliber ammunition;

31.   17 rounds of Cascade Cartridge 9mm caliber shot shell ammunition;

32.   Three rounds of Pobjeda-Gorazde .22 caliber ammunition;

33.   One round of Winchester .25 caliber ammunition;

34.   One round of Winchester .270 caliber ammunition;

28

35.   One round of Winchester .30 caliber ammunition;

36.   One round of Winchester .357 caliber ammunition;

37.   One round of Israeli Military Industries 9mm caliber ammunition.